CITY OF BOSTON *vs.* FRANK J. PAGLIARO & another.

Suffolk.    January 8, 1973. — February 23, 1973.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Estoppel. Judgment. Zoning,* Building permit. *Mandamus.*

A final judgment for the petitioner in a mandamus proceeding against a city and its building commissioner, who was required by its zoning code "to enforce" the code's provisions, in which the pleadings clearly presented the issue of compliance of a proposed building with the provisions of the code and at the trial of which there was extensive testimony on that issue, followed by issuance of a building permit pursuant to the mandate of the writ, operated as an estoppel to bar retrial of the question of the building's compliance with the code in a subsequent suit in equity by the city to enjoin construction of the building by the successors in title to the petitioner in the mandamus proceeding.

BILL IN EQUITY filed in the Superior Court on July 14, 1971.

The suit was heard by *Travers,* J.

*Herbert P. Gleason,* Corporation Counsel (*Sheldon M. Drucker,* Assistant Corporation Counsel, with him), for the city of Boston.

*Bruce G. McNeill* (*John E. Bradley* with him) for the defendants.

HALE, C.J.   The city of Boston (city) by this bill of complaint seeks to enjoin the construction of a seventeen-story apartment building at 1410 Columbia Road in South Boston, alleging that the building will be in violation of the floor area ratio requirements of articles 13 and 15 of the Boston Zoning Code (1968), (Code). The bill was filed on July 14, 1971. A temporary injunction against the construction of the building was denied.

The case was tried before a Superior Court judge who voluntarily filed "Findings, Rulings, and Order" pursuant to which a final decree was entered dismissing the bill. The case is before us on the city's appeal. The evidence is reported.

We summarize the facts found by the judge and additional facts not specifically found by him which we find from the record and which we consider material. The property at 1410 Columbia Road, South Boston, was purchased by Bay Towers Trust (Trust) in December, 1970. The lot, which was in an H-2 zoning district, was occupied by a four-story building which formerly housed a brewery. On January 12, 1971, the Trust applied for a building permit and submitted plans for a proposed seventeen-story building containing 153 apartments with three basement levels for off-street parking. After the plans were submitted, a representative of the owner's architect (architect) conferred with John Curtis, the zoning administrator in the city building department. During their discussion Curtis advised the architect that there was a zoning setback problem affecting the garage structure. The architect stated that he could redraft the plans to bring them into compliance with the setback requirements. Curtis then

informed the architect that the floor area ratio requirements of the Code permitted this structure to be built with a maximum floor area ratio of 2.5 instead of 2.0, as the lot abutted public open space having a width of more than 100 feet.[1] According to Curtis the proposed building was in compliance with the floor area ratio requirements of the Code. The architect thereafter submitted revised plans and Curtis approved the plans on March 24, 1971, but the building commissioner told a representative of the owners that although the plans were in order, a building permit could not issue until certain microfilms of the plans were received. The fee for the permit was then paid. Demolition of the old brewery building on the site was then begun. On March 29, 1971, the microfilms of the plans were received by the building department.

On April 8, 1971, no building permit having been issued, the Trust instituted a petition in the Superior Court for a writ of mandamus against the building commissioner and the city to compel the building commissioner to issue the building permit. The petition for the writ of mandamus in the prior proceeding averred (1) that the submitted plans and specifications "conform in all respects to the City of Boston Building Code and *Zoning Ordinances*" (emphasis supplied). The petition also averred (2) that "[I]t is [the building commissioner's] official duty to issue Building Permits pursuant to the Building Code and Zoning Ordinances of the City of Boston." The petition further averred

[1] Article 15 of the Code limits the bulk of a building in relation to the lot size by setting a maximum floor area ratio which is the result of dividing the total gross floor area by the total lot area. For buildings in H-2 districts, the maximum floor area ratio is 2.0. However, under article 15, § 15-3 of the Code, where a lot is adjacent to public open space having a width of more than 100 feet, the actual lot size may be augmented by adding to the actual lot size the product of one-half of the width of the public open space in excess of 100 feet (or 50 feet, whichever is the lesser) and the length of the rear line of the lot. In the present case, the floor area ratio as computed from the plans and actual lot size was 2.86. By applying the augmented lot size under § 15-3, a floor area ratio of 2.49 is achieved. Until about the first of April, 1971, the city uniformly interpreted these provisions to allow a building to exceed the 2.0 limitation so long as, after the application of the § 15-3 credit, the floor area ratio so computed did not exceed 2.5. Stated in another way, the city considered that in an H-2 district a building could be constructed on a lot abutting such public open space with a maximum floor area ratio of 2.5 instead of 2.0 and that the lot size as augmented under § 15-3 could be used in arriving at the ratio of 2.5.

(3) that the building department of the city had examined the plans and specifications and determined that they conformed in all respects to the building code and zoning "ordinances." The answer to the petition admitted the second of these averments. The other two were not specifically controverted and must be taken to have been admitted. A trial was held in April, 1971, at which Curtis testified that the plans conformed to the zoning requirements for the district in which the building was to be erected. No question was put to Curtis with respect to the floor area ratio requirements, nor did he testify on this subject. The building commissioner testified that he had received a telephone call from the mayor directing him not to issue the building permit and that he had received another call from a legislator. His attention was directed by these calls to the possibility that the premises were incorrectly zoned. He testified that he had stopped action on the issuance of the permit so that he could "examine those conditions that were alleged to exist around this fact. I did examine them and I find that the building is properly zoned in an H-2 district." The building plans examiner of the building department testified that before a building permit could issue an affidavit of a structural engineer to the effect that he would make an on-site inspection during the construction would have to be furnished. This requirement was complied with during an overnight recess in the trial. At the conclusion of the trial the judge ordered the writ to issue. The building permit was issued to the Trust on April 16, 1971, in compliance with the mandate of the writ. No appeal was pursued in that case.

On May 5, 1971, Curtis sent a letter to the Federal Housing Administration, which agency was to insure a mortgage under which the building was to be financed. The letter stated that the proposed building fully complied with the code for an H-2 district. Title to the property was transferred from the Trust to the present defendants, who are partners doing business as Bay Towers Associates. The mortgage closing with the Federal Housing Administration took place the same day. Work on the project was continued

Boston *v.* Pagliaro.

and excavation of the site undertaken. By June 15, 1971, a pile driving rig was on the site and was in operation on June 17, 1971, driving test piles.

On July 6, 1971, a conference was held between city officials and the defendants during which the defendants were informed for the first time that a new interpretation of the existing provisions of the Code relating to floor area ratio requirements had been made. This new interpretation was conceived by a representative of the mayor's office prior to the mandamus proceeding, but it appears that it was not publicly announced until this meeting. The building commissioner was aware of it prior to the mandamus proceeding, had discussed it with the mayor, and had been instructed by the mayor not to issue a building permit. The effect of this new interpretation, contrary to what Curtis had instructed the architect prior to the mandamus proceeding, was to set the maximum permissible floor area ratio, after the application of the credit for land abutting certain public open space, at 2.0 instead of 2.5. The defendants were told that nothing could be done to make the building, as planned, comply with the floor area ratio requirements as newly interpreted. The officials then requested the defendants to return the building permit which they refused to do.

The present suit was instituted on July 14, 1971. As of that date the defendants had expended or irrevocably committed $1,300,000 to the project. A condition of their loan agreement with the Federal Housing Administration required the building to be completed within eighteen months and provided that if work stopped for more than twenty days the mortgage could be foreclosed. Despite the suit work was continued on the project and by the end of November, when this case was tried, eight stories of structural steel had been erected.[2]

The defendants[3] have raised in defence that the city is

---

[2] At the oral argument counsel informed us that the building is now substantially complete.

[3] The defendants in the present case are the successors in ownership interest

barred from relief in this suit by reason of the result in the prior mandamus proceeding brought by the defendants' predecessor in title against the city and the building commissioner. Stated more narrowly, the issue thus raised is whether the city is now estopped from retrying the question whether the defendants' building is in compliance with the Code. The Superior Court judge ruled in favor of the defendants on this issue. Our consideration leads us to the conclusion that this issue is decisive of the case.[4]

An estoppel by judgment will operate where an issue attempted to be raised in the second case was so necessarily involved in the first case that the judgment which was entered therein could not possibly have been entered without that issue having been adjudicated adversely to the party later attempting to raise it. *Wishnewsky* v. *Saugus,* 325 Mass. 191, 194-195, and cases cited. In order, therefore, to determine the effect of the final judgment in the mandamus proceeding, it is necessary to consider what was then brought in issue between the parties.

The mandamus proceeding was brought to compel a ministerial act by the building commissioner under a duty imposed by law. The Trust would not have been entitled to a writ of mandamus to compel the issuance of a building permit unless it could show compliance with the zoning regulations. See *Karl V. Wolsey Co. Inc.* v. *Building Inspector of Bedford,* 324 Mass. 419, 420-421. Section 5-1 of the Code provides, "It shall be the duty of the Building Commissioner to enforce the provisions of this code." Specifically, the zoning enabling legislation of the city provides in pertinent part: "The building commissioner of the city shall withhold a permit for the construction or alteration of any building or structure if the building or structure as constructed or altered would be in violation of

and therefore in privity with the petitioner in the mandamus proceeding. *Willett* v. *Webster*, 337 Mass. 98, 101.

[4] The application of the doctrine of res judicata might be more appropriate under these facts. However, because the result would not change and because the parties have addressed themselves only to the equally appropriate doctrine of collateral estoppel, we have limited our consideration to the latter.

any zoning regulation. . . . "St. 1956, c. 665, § 7. Section 4-1 of the Code[5] also provides that no building shall be erected except in conformity with the Code. It is clearly the duty of the building commissioner to determine whether a proposed building complies with the zoning code and not to issue a building permit unless it does. The pleadings in the mandamus proceeding clearly presented the zoning issue. Furthermore, at the trial on the merits of the mandamus petition, there was extensive testimony by the building commissioner and by the zoning administrator[6] on the issue of compliance with the Code on the part of the defendants' predecessor in title. That issue was thus necessarily involved in the mandamus proceeding, and the writ could not have been ordered to issue without a determination of such compliance.

The theory which the plaintiff now advances with respect to the alleged violation of the Code does not arise out of events subsequent to the mandamus proceeding which are sufficient to take this case out of the rule of collateral estoppel. The floor area ratio requirements of the Code have not been amended, nor does it appear that any material changes have been made in the building. Cf. *Buyarsky, petitioners,* 322 Mass. 335, 339; *Davidson* v. *Selectmen of Duxbury,* 358 Mass. 64, 67.

As between the present parties, then, the issue of compliance with the Code must be considered to have been settled and adjudicated by the earlier litigation. See *Sandler* v. *Silk,* 292 Mass. 493, 498; *Whittemore* v. *Selectmen of Falmouth,* 304 Mass. 72, 74; *Mellen* v. *Modern Parlor Frame Corp.* 321 Mass. 305, 309; *Wayland* v. *Lee,* 325 Mass. 637, 641. See generally Restatement: Judg-

---

[5] Except as provided in Chapter 665 of the Acts of 1956 as now in force or hereafter amended or in this code, . . . no structure or part thereof shall be erected, reconstructed, extended, or altered except in conformity with the regulations specified in this code for the district in which it is located; . . . ."

[6] As we have previously noted, the building commissioner and the mayor of the city knew prior to this trial that a change in interpretation of the Code requirements as to maximum floor area ratios had been made. The proposed building could not conform to the Code's maximum floor area ratio under such new interpretation.

ments, § 68. We hold therefore that the doctrine of estoppel by judgment is operative against the city in the present case.

The provisions of the Code pertinent to this case have generated great confusion. Two different and opposing interpretations have been placed before this court. The draftsmen have not, by their language, created a formula sufficiently clear to be readily understood. Inasmuch as the issue of the defendants' compliance with the maximum floor area ratio provisions of the Code must be deemed to have been settled and adjudicated by the earlier litigation, it is not necessary for us now to decide which of the two conflicting interpretations should prevail.

The final decree is affirmed. The defendants are to have costs of this appeal.

*So ordered.*