JOSEPH, J.
Plaintiffs obtained an alternative writ of mandamus against the Public Employes’ Retirement Board[1] to require that it "Stop acting as trustee for any gubernatorial retirement funds paid by any governor or former governor after the date of December 7,1972 and that gubernatorial benefits be computed on amounts actually received on or before the effective date of the repeal of the aforesaid gubernatorial retirement fund.” After a hearing on the return to the writ, the trial court "dissolved” the alternative writ and denied the issuance of a peremptory writ. Plaintiffs appeal.
In 1971 the Legislative Assembly enacted a law providing retirement benefits for Oregon’s governors. Oregon Laws 1971, ch 686 (codified as ORS 176.650 to 176.730). The Act created a Gubernatorial Retirement Fund to be administered by the Public Employes’ Retirement Board as trustee.[2] It had an emergency clause and became effective on July 1,1971. Pursuant to Section 10 of the Act, then Governor McCall began to make contributions to the fund.
In July, 1972, an initiative petition to repeal the 1971 Act was certified for the November General Election. The voters repealed the law, effective December 7, 1972. Governor McCall continued to have withheld from his salary the required monthly contribution to the fund until the end of his term in December, 1974.
In October, 1974, a complaint for declaratory judgment was filed in Marion County by 'Taxpayers Protective Association of Oregon, Inc.” and a private individual against James L. McGoffin "as Director of the Oregon Public Employees Retirement Board,” *[88] State Treasurer James Redden, Attorney General Lee Johnson[3] and Governor McCall. The complaint alleged that the 1972 initiative repeal had abolished the fund; that contributions to the fund from the Governor's salary and from legislatively appropriated funds after December 7, 1972, were illegal; that any payments of benefits to Governor McCall would be illegal; that any claimed interest of Governor McCall in the fund was illegal and void because it would violate Oregon Constitution, Art I, §§ 32 and 20, and Art IV, § 24, and would have no statutory sanction; and, finally, that the past, present and future actions of the defendants would be "a plain, arbitrary, and capricious abuse of their public offices and trust, and not in the public interests * * One of the verifiers of the complaint signed himself "R. J. Ness — Pres Taxpayers Protective Association of Oregon Inc.” The matter came before the Marion County Circuit Court on the pleadings and stipulated facts. On November 27, 1974, that court entered an "Order” as follows:
"IT IS HEREBY ORDERED, DECREED AND DECLARED that defendant McCall be and hereby is eligible and lawfully entitled to the Gubernatorial retirement benefits under the provisions of Oregon Laws 1971, Chapter 686; and
"IT IS FURTHER ORDERED AND DECREED that the defendants McGoffin and Redden, or their successors in office, be and hereby are directed to comply with all the provisions of said Oregon Laws 1971, Chapter 686 as to defendant McCall.”
The plaintiffs filed a notice of appeal to this court. On April 8, 1975, that appeal was dismissed for want of prosecution; it was not reinstated. It follows that the order of the Marion County Circuit Court is valid and subsisting.
On December 17, 1975, these plaintiffs filed a petition for an alternative writ of mandamus; the writ issued the next day. Although the matter came on for *[89] hearing on January 22,1976, the record is not clear as to just what happened then, for on June 14, 1976, an identical writ issued. The order challenged here was on the latter writ. The petition and writ alleged the trustee status of the Board under the 1971 law, the repeal of that law in 1972, and that the Board "has the duty to comply with the complete repeal of the aforesaid Gubernatorial Retirement Fund and no longer has jurisdiction to act as trustee for any funds paid by any governor after the effective date of the 'repeal’ ” but had failed and refused to perform that duty. The only material allegation which was not in substance the same as a correlative allegation in the 1974 Marion County declaratory judgment action appears in paragraph VI of the writ:
"That the plaintiffs have a general interest in the preservation and protection of rights specifically reserved to them under the Oregon Constitution Article IV [, Section] 1 * *
The defendant answered, pleading a general denial and affirmative defenses of the existence of the prior judgment, res judicata and collateral estoppel. After a trial on the merits, the alternative writ was "dissolved” and the peremptory writ was denied.
The trial court found, on the merits, that
"* * * plaintiffs have failed to prove either a right to the relief demanded or that defendant is under a corresponding legal duty to act as demanded and as would be required if the peremptory writ were to issue; * :j: if: 99
And, further,
«* * * that plaintiffs and defendant are in privity with the corresponding parties [in the Marion County case] and that, with the possible exception of a constitutional claim as to the effective date of the repeal of the Gubernatorial Retirement Fund Act (which claim, if it was raised herein, was apparently abandoned by plaintiffs at trial and was, in any event, without merit) the issues in the within action are identical with the issues in said Marion County case; and the Court therefore concludes that plaintiffs herein are, by the judgment in *[90] the Marion County case, collaterally estopped from obtaining a peremptory writ of mandamus in the within action.”
At the trial the only evidence produced by the plaintiffs was the testimony of an employe of the defendant that contributions from Governor McCall’s salary had been credited to his account both before and after December 7,1972, and that the witness had acted on the directions of his supervisor in auditing those funds. Having shown that, plaintiffs argued that in accepting the money after the repeal, the Board acted illegally.[4] The defendant’s evidence was directed at establishing facts relating to the collateral estoppel issue.
In their opening brief, plaintiffs make arguments on the merits directed in substance at just one point: When the people voted to repeal Oregon Laws 1971, ch 686, they intended to deny every governor, including specifically Governor McCall, a pension; to administer funds with the objective of providing him a pension is therefore illegal after the repeal. That point is precisely the main one which was sought to be established in the 1974 proceeding. Indeed, when the trial judge in this case suggested that the plaintiffs’ objective was to get an appeal on that question, which was denied them when the attorney in that case suffered the appeal to be dismissed, the plaintiff Ness agreed with the court.
In the Marion County case the plaintiffs alleged their status as taxpayers and that the cause was brought "on behalf of themselves and other taxpayers of the State of Oregon.” It was, in popular parlance, a "taxpayer’s suit.” The syllogism recited in the preceding paragraph was fully tested in that action and found neither logically nor legally compelling. That it was never subjected to appellate review was solely the *[91] fault of the attorney in that action.[5] Governor McCall was a defendant in the earlier action; he has a judgment in his favor affirming his right to a pension. The then State Treasurer was a defendant in his official capacity; he and his successors were directed to recognize Governor McCall’s right to a pension. The Director and Executive Secretary of the defendant, James McGoffin, was a defendant in his official capacity; he and his successors were also directed to recognize Governor McCall’s right to a pension.[6]
None of those defendants are parties here, but a mandamus directed to the Board would directly affect the functions of the Director. However, the Treasurer, who is the custodian of all state funds and is responsible for disbursing those funds, would not be affected *[92] by the mandamus. Moreover, former Governor McCall would still have the benefit of the 1974 judgment.
The record here adequately supports the conclusion that the plaintiff Ness was a moving force in the 1974 action. He verified the complaint; he was president of the corporate plaintiff; and he had or assumed the function of supervising that litigation to some extent at least. The status of the plaintiff Hoffman is not as clear. The corporate plaintiff in the 1974 case was an organization of organizations, and apparently it did not have individuals as members or shareholders. Mr. Hoffman was a member of an organization also formed by Mr. Ness and having a similar name and similar purposes, but that organization may not have been a member of the Marion County plaintiff corporation. Nonetheless, it is clear that Mr. Hoffman knew about the 1974 case, was personally interested in its outcome, supported the plaintiffs’ objectives and was interested in obtaining a reversal of the result in that case.[7]
The defendant asserts that the identity of defendants in the two actions (i.e., Mr. McGoffin in his official capacity in 1974, and the Board here), the identity of issues and privity between a plaintiff there and the plaintiffs here is sufficient to invoke the doctrine of collateral estoppel. While that conclusion might be accurate, we do not believe the doctrine would form an adequate decisional base for this case. Collateral estoppel would serve only to bar the reliti *[93] gation of the same issues between the same parties or their privies, and its application here would serve only to suggest that the issues decided in the Marion County case could be relitigated if parties plaintiff could be found who would not be estopped. We believe a related but broader principle should be applied.
 The defendant’s brief urges that when a suit is brought by one qualified citizen on behalf of other citizens to determine a public right in a matter of general interest, all citizens are barred from relitigating the issue. In Floersheim v. Bd. of Corn’s of Harding Co., 28 N M 330, 212 P 451 (1922), the principle was stated thus:
"Where a suit is brought to determine a public right, * * * all citizens and taxpayers of the county are parties to the proceeding by representation, and are bound by the judgment, not only as to matters which were litigated, but also as to matters which existed at the time and which could have been litigated in the case, the same as the actual formal parties on the record, regardless of whether they had actual notice of the pendency of the suit or not. [Citations omitted.]” 28 N M at 335.
It may be disputed whether extending the principle to matters "which could have been litigated” would be proper, but in this case there is a complete identity between the issue presented in the writ[8] and tried and the main issue in the Marion County case, so there is no necessity for determining the breadth of the rule.
 We believe the rule was well stated in Drainage Dist. No. 1 Reformed v. Matthews, 361 Mo 286, 234 SW2d 567 (1950):
"' * * * In the absence of fraud or collusion a judgment for or against a municipal corporation, county, town, school or irrigation district or other local governmental agency or district, or a board or officers properly *[94] representing it, is binding and conclusive on all residents, citizens and taxpayers in respect to matters adjudicated which are of general or public interest such as questions relating to public property, contracts or other obligations. * * * The rule is applicable to persons who have notice of the suit and even to persons without actual notice of the suit.’ * * *
"The rule * * * is founded upon basic concepts of privity and virtual representation. The doctrine of virtual representation, well recognized in equity, is based upon considerations of necessity and paramount convenience and may be invoked to prevent a failure of justice. [Citation omitted.] The doctrine is applicable if * * * the interest of the represented and the representative are so identical that the inducement and desire to protect the common interest may be assumed to be the same in each and if there can be no adversity of interest between them. * * * And under the principles of that rule 'privity’ depends more upon the relation of the parties to the subject matter than upon their connection as parties with or any activity in the former litigation. * * *” 361 Mo at 302-303.
See also, Sierk v. Reynolds, 484 SW2d 675 (Mo App 1972). So stated, the rule is appropriate to dispose of this case.
The trial court’s order and judgment referred to an issue which was possibly not litigated in the Marion County action, relating to the effective date of the 1972 repeal. The point is not clear in the pleadings, argument at trial or in the briefs. In their brief, plaintiffs refer to language in Oregon Constitution, Art IV, § l(4)(d):
"* * * A referendum ordered by petition on a part of an Act does not delay the remainder of the Act from becoming effective.”
The suggestion is that the filing of an initiative petition in 1972 somehow retroactively suspended the 1971 Act’s effective date. Plaintiffs have confused the effect of a referendum, which does suspend the effective date of an act, and an initiative, which has no such effect. Oregon Constitution, Art IV, §§ l(4)(d), 28. *[95] Oregon Laws 1971, ch 686, had been in effect for more than 17 months before it was repealed. Even if this was a "new” point not raised in the Marion County proceeding, it was utterly without merit and its inclusion in the pleadings added nothing to plaintiffs’ case.
Just before the trial in this case, plaintiffs filed a motion asking the "Court’s permission to allow Mr. [Robert J.] Wright to act as counsel for the plaintiffs in the above entitled case and to admit him to the practice of law in this one case only.” When the motion was argued the court pointed out that Mr. Wright was then under a permanent injunction forbidding him from practicing law. Plaintiffs acknowledged that fact. It is impossible to see how the trial judge could, under any circumstances, have allowed the motion. In their briefs plaintiffs rely upon ORS 9.310 to make a distinction between "an attorney” and "counsel.” Whatever the utility of that distinction might be in some circumstances, nothing could be plainer than that these plaintiffs were asking the court to permit Mr. Wright to practice law for them. The trial judge could not do that.
The order and judgment of the trial court is affirmed.

The briefs refer to the Public Employes’ Retirement Fund as the defendant; the pleadings correctly name the Board as defendant.

Nothing in the language of the statute tied the right to receive a retirement benefit to the quantity of money in the fund or the existence of the fund.

A demurrer was subsequently sustained on behalf of the Attorney General.

The transcript refers to memoranda by both sides. They are not in the record before us.

The plaintiff Ness told the court in this case that he first became aware that something was amiss in the appeal of the earlier case by reading a letter to the editor in a newspaper. He was the president of the organization which was one of the plaintiffs in the 1974 action. He contacted the attorney, who acknowledged that the appeal had in fact been dismissed and thereupon refunded the attorney fee he had previously collected. The refund was made to plaintiff Ness.

Paragraphs IV and V of the declaratory judgment complaint read:
"That at all times hereinafter mentioned, defendant James L. McGoffin is and has been the duly appointed and qualified Director of the Public Employees Retirement System of the State of Oregon, and was, and is charged by law to appropriate into a trust fund known as the Gubernatorial Retirement Fund certain sums authorized by law to be appropriated from the monthly salary of each individual selected and serving as Governor, for the uses and purposes relating to retirement benefits for Governors as set forth in the Oregon Revised Statutes, as repealed.
"That at all times hereinafter mentioned, defendant Public Employees Retirement Board of the State of Oregon is and has been a duly constituted state agency under the laws of the State of Oregon, and was, and is, charged by law as trustee of the Gubernatorial Retirement Fund, for the uses and purposes relating to retirement benefits for Governors, and claims therefor, as set forth in Oregon Revised Statutes, as repealed.”
In the stipulation of facts of that case the Public Employes’ Retirement Board was referred to as "the trustee of the Gubernatorial Retirement Fund.” The Board was not named in the caption of the complaint and the final "Order” did not mention the Board. The Director has general responsibility for administration of the functions charged to the Board. ORS 237.251, 237.259.

 The following appears in the transcript of this case:
“MR. HOFFMAN: It seems to me, Your Honor, that this collateral estoppel would refer to the Taxpayers Protective Association. But that Mr. Ness and myself brought this action. And we — we are members, of course, of the Taxpayers Protective Association. But we’re separate entities, as I understand it. We lost on one issue in Marion County. But we tried to bring in a new issue, the Constitutionality of the Board accepting these funds. And it’s like — if I can make a simile, what the bar association does in the State of Oregon might affect you, but you may not necessarily be involved in it, in that particular action. And what we’re doing here today, I think is separate and distinct from what the Taxpayers Protective Association did in Marion County.”

Although the writ included a command "that gubernatorial retirement benefits be computed on amounts actually received on or before the effective date of the repeal of the aforesaid gubernatorial fund,” no evidence or argument was had on the point, and it must be treated as abandoned.