SAMUEL MORGANELLI & another[1] vs. BUILDING INSPECTOR OF CANTON & another.[2]

Norfolk.    January 16, 1979. — April 30, 1979.

Present: HALE, C.J., GOODMAN, & DREBEN, JJ.

*Practice, Civil*, Parties. *Res Judicata. Zoning*, Enforcement.

The matters raised in an action by abutters seeking revocation of a building permit because of alleged violations of the town's zoning by-law were conclusively settled in a prior action by the landowner against the building inspector seeking issuance of the permit under certain exemptions of the by-law. [479-480]

Where a landowner had successfully brought an action against a town's building inspector to obtain a building permit and the case had been decided on its merits, abutters of the landowner's property were bound by the judgment and could not relitigate the propriety of the issuance of the permit under the town's zoning by-law. [481-488]

CIVIL ACTION commenced in the Superior Court on May 10, 1976.

The case was heard by *Tuttle*, J., a District Court judge sitting under statutory authority.

*Francis J. Ulman* for Samuel Morganelli.

*A. Russell Lucid, Jr.*, for William H. Dillon, Jr.

*Ellen S. Mattingly* for Francis A. Leahy.

*Joseph H. Malloy*, Town Counsel, for the Building Inspector of Canton.

---

[1] William H. Dillon, Jr.

[2] Francis A. Leahy, trustee.

DREBEN, J. This is an appeal by two abutters from a judgment, entered after trial, dismissing their complaint seeking enforcement of the zoning by-law of the town of Canton. We affirm on the ground of res judicata.

The plaintiffs in this action are owners of property in Canton immediately adjacent to a lot (Lot 28) owned by the defendant, Francis A. Leahy, trustee of Breton Realty Trust. The other defendant, Dominic Duganiero, is the building inspector of the town. The plaintiffs in their complaint, as amended, seek: (1) an order revoking a building permit issued by the building inspector because the proposed residence of the defendant Leahy does not meet the front setback requirements of the Canton zoning by-law; (2) an injunction prohibiting Leahy from continuing to build on his property; and (3) an order requiring Leahy to remove all structures and to restore the lot to the condition it was in prior to the start of construction. Leahy's answer raised res judicata as an affirmative defense. The answer of the building inspector averred that the permit complied with a 1974 judgment in an action brought by Leahy's predecessor in title, Paul B. Morley.[3]

In order to determine whether the plaintiffs in this action are barred by the *Morley* litigation,[4] we have to determine the scope of that litigation, whether it adjudicated the matters raised in this action and, if it did, whether these plaintiffs are bound by the prior judgment.

1. We first examine the scope of the prior litigation. The trial judge in this action found that "the exact issues presented for consideration in the present suit were considered by the court and fully litigated and contested between the plaintiffs in the original *Morley* suit and the

---

[3] Paul B. Morley, trustee, vs. Dominic Duganiero, Building Inspector of Canton, Superior Court, Norfolk County, Eq. No. 108697 (1973) (*Morley*).

[4] This opinion is written on the assumption that there has been no substantial change in the controlling facts, the by-law, or legal principles since the *Morley* case. See *Montana* v. *United States*, 440 U.S. 147, 159-162 (1979). No one has alleged otherwise.

Building Inspector of the Town of Canton." While we do not have before us the entire record of the *Morley* litigation,[5] the material we do have, and which will be discussed more fully below, clearly indicates that the judgment in *Morley*, if binding on the plaintiffs, bars the claims raised here.

The facts concerning the *Morley* litigation are derived from the pleadings, from an "Agreed Statement of Facts" filed by the parties, and from the findings, rulings and orders of the judge in that case.

*Morley* was a petition for a writ of mandamus brought by the previous owner of Lot 28, asking that the building inspector be directed to issue a building permit.[6] Although the lot did not meet either the area or the setback requirements of the governing by-law, Morley claimed that his lot came within certain exceptions in the by-law which permitted him to build on the lot. One exception was a grandfather clause (§ VII) which permitted construction if the lot (1) met the area requirements of the zoning by-law when the lot was laid out, (2) was not subsequently reduced in size so as further to increase its nonconformity with the area, width and frontage requirements (except by a taking by eminent domain), and (3) met all the other provisions of the then current by-law.

The original lot as laid out and recorded in 1939 showed a ninety-foot depth from the street (Pleasant Circle, formerly known as Daniels Road). In 1946, however, the town laid out the street twenty feet farther south than shown on the 1939 plan so that the lot, in fact, was approximately seventy feet deep and not ninety feet deep.[7] Both the building inspector and Morley agreed that the

---

[5] As to the use of extrinsic evidence to determine what issues were litigated, see Restatement (Second) of Judgments § 68, Comment f (Tent. Draft No. 4, 1977). As to use of the entire trial and appellate record of the prior proceedings, see *Boyd* v. *Jamaica Plain Co-op. Bank, ante* 153, 160 (1979).

[6] No question is raised as to the propriety of that remedy.

[7] The front setback requirement was thirty feet, and the rear setback requirement was thirty-five feet. If both those setback require-

lot met the area requirements applicable at the time the lot was laid out and recorded in 1939, but the building inspector claimed that the lot had subsequently been reduced so as to increase its nonconformity.

Another exception in the by-law (§ VIII C) stated that a building could be constructed as near to the street line as the average of the setbacks of the dwellings on either side of the lot. It was agreed by the parties in *Morley* that the average setback from the street of the buildings on either side of the lot was twenty-two and one half feet.[8]

The judge in *Morley* issued initial "findings, rulings and order" in January, 1974, and decided that "it is permissible to build a single family home on the subject lot." He also ordered that a writ of mandamus issue directing the building inspector to issue a building permit. The building inspector filed a claim of appeal. On April 2, 1974, the judge withdrew his January findings, rulings and order (the reason for such withdrawal does not appear)[9] and, on April 8, 1974, issued new "findings, rulings and order," which contained the following new ruling: "Due to the taking[10] and the exemption of the lot from the

---

ments were to be met, a building of only five feet in depth could be constructed on a lot having a depth of approximately seventy feet.

[8] There is evidence in the present action which confirms this figure. While the complaint alleges that Morganelli's house is set back nineteen feet from the street and Dillon's house is set back twenty-nine feet, an engineer testified that Dillon's house is, in fact, only set back twenty-six feet. ([26 + 19] ÷ 2 = 22.5). Morganelli testified that Leahy's foundation at its closest point to the street was about twenty-one feet. Dillon testified that the front of Leahy's foundation was fifty-eight feet from the back line of the lot.

[9] In this action Morganelli attempted to question the building inspector concerning the withdrawal of the earlier document. The judge excluded such evidence, and no objection was made. No claim is made that the second ruling in *Morley* was obtained by fraud or collusion.

[10] The judge thus found that the laying out of the street came within the 1939 amendment to the by-law providing that a reduction in size on account of a taking by eminent domain would not prevent construction.

6500 square foot requirement under the 1939 public tak-
ing clause, I find that this lot is presently buildable for a
single family dwelling with 22.5' setback measured *from
original street line*" as shown on the 1939 plan (emphasis
supplied). This ruling was erroneous as set forth in the
margin.[11]

The April ruling also specified the rear and side yard
requirements, and stated that the building inspector had
unlawfully denied Morley a permit. The judge ordered
that a writ of mandamus issue directing the issuance of
a building permit to Morley. The appeal by the building
inspector from the January order was withdrawn on the
same day that the new order was issued, and no appeal
was taken from the April order.

2. The foregoing detailed description of the *Morley* liti-
gation shows that the matters raised in this action were
conclusively settled in *Morley*. The plaintiffs claim, how-
ever, that *Morley* is not a bar to this proceeding because
§ VIII of the Canton by-law governing setbacks was not
referred to in the pleadings in *Morley* and that the only
reference in the pleadings was to § VII which relates to
lot areas, widths and exceptions for existing lots. We do
not agree.

The setback questions were obviously before the court.
The statement of agreed facts specifically referred to
§ VIII C of the by-law (the same section that is relied upon
in the complaint in this action) and set forth that the
building would have a "reduced" setback and would meet
the setback exception measured by the mean distance of
adjoining buildings.

---

[11] The consequence of ordering the front setback from the original
street line on the 1939 plan is that the 22.5' setback is measured from
a more northerly point than the buildings of the adjoining owners. See
note 8, *supra*. Thus, the plaintiffs' claim that the *Morley* decision was
in error is correct. We shall discuss the effect of the error in part 3 of
this opinion.

The judge's rulings and order in *Morley* specified the exact front, back, and side yard requirements for a building on Lot 28 and ordered the building inspector to issue a permit for a residence meeting such requirements. Under these circumstances, the ruling as to the front yard requirement under the zoning by-law was "inextricably interwoven with the rulings of law and order for judgment." *Sheehan Constr. Co.* v. *Dudley*, 299 Mass. 48, 50-51 (1937). Cf. *Trustees of Stigmatine Fathers, Inc.* v. *Secretary of Admn. & Fin.*, 369 Mass. 562, 564, 566 (1976). The right to put a building on the property with a 22.5' setback as shown on the 1939 plan is conclusive upon the parties and those persons whom they represent. *Jamaica Pond Aqueduct Corp.* v. *Chandler*, 121 Mass. 1, 2 (1876). It is a "fundamental precept of common-law adjudication," that a right determined by a court of competent jurisdiction cannot be disputed in a subsequent proceeding between such persons. *Montana* v. *United States*, 440 U.S. 147, 152-153 (1979).

Moreover, the claim raised by the plaintiffs in this action is the same claim which was raised in *Morley*, namely that the zoning by-law of Canton precludes a building on Lot 28. Even if the front setback requirements had not been before the court, the *Morley* case cannot be viewed as an action to determine whether § VII of the Canton by-law precluded a building on Lot 28, and this action as one to determine whether § VIII precludes a building on such lot. It is rudimentary, whatever the definition of "claim," or of the older term "cause of action," that all the defenses to the issuance of a building permit for Lot 28 based on the Canton zoning by-law had to be raised in the prior action. The first action would be a bar even if, as is not the case here, only one section of the by-law had been put in issue. *Trustees of Stigmatine Fathers, Inc.* v. *Secretary of Admn. & Fin.*, 369 Mass. at 564-567. See Restatement (Second) of Judgments § 47 (Tent. Draft No. 1, 1973) and § 61(2) (Tent. Draft No. 5, 1978).

3. We next turn to the question whether the plaintiffs who were not parties to the *Morley* litigation are, nevertheless, bound by its judgment.[12] That question, in turn, depends on the nature of the plaintiffs' interest, whether that interest was represented in *Morley*, and whether there are special circumstances or due process considerations which make it unfair to bind the plaintiffs to that judgment. As we have seen earlier, the plaintiffs are here challenging, as a violation of the zoning by-law, Leahy's right to construct a building on his land. Under Massachusetts law, abutters or neighboring property owners do not have a private cause of action for direct enforcement of zoning regulations. *O'Brien* v. *Turner*, 255 Mass. 84, 85-86 (1926). *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 431 (1949). *Boyle* v. *Building Inspector of Malden*, 327 Mass. 564, 566-567 (1951). *Nigro* v. *Jones*, 332 Mass. 741, 744 (1955). *Smith* v. *Board of Appeals of Plymouth*, 340 Mass. 230, 234 (1960). *Flynn* v. *Seekonk*, 352 Mass. 71, 73 (1967). *Onorati* v. *O'Donnell*, 3 Mass. App. Ct. 739 (1975). Compare *Ballantine* v. *Falmouth*, 363 Mass. 760, 765 n.4 (1973).

The responsibility for enforcing zoning ordinances or by-laws lies with the municipality and is assigned by statute to the building inspector or other specified municipal officers. G. L. c. 40A, § 7.[13] *Brady* v. *Board of Appeals of Westport*, 348 Mass. 515, 518 (1965). Except for rights specifically granted by statute (see note 16, *infra*), citizens and abutters only have the right to call upon the appropriate municipal officials to require enforcement of

---

[12] There is no question that both defendants were either parties or in privity with parties in *Morley*. The building inspector was a party and Leahy, the purchaser from Morley, as the successor owner is in privity with a party. *Sheehan Constr. Co.* v. *Dudley*, 299 Mass. at 54. *Boston* v. *Pagliaro*, 1 Mass. App. Ct. 117, 123-124 (1973).

[13] As appearing in St. 1975, c. 808, § 3. The law in effect at the time this action was brought was G. L. c. 40A, §§ 12 and 22, inserted by St. 1954, c. 368, § 2. *Casasanta* v. *Zoning Bd. of Appeals of Milford*, 377 Mass. 67, 70-71 (1979).

the zoning laws, and unless the officials decline or refuse to act, thereby creating a controversy between the officials and the citizen, the latter cannot bring an action. *Woods* v. *Newton*, 349 Mass. 373, 378-380 (1965). Only upon the showing of such a controversy can the citizen invoke, by an action in the nature of mandamus, the *public* right to have the "*municipality* enforce the applicable law." *Brady*, 348 Mass. at 518-519, 521 (emphasis supplied). *Parrotta* v. *Hederson*, 315 Mass. 416, 418 (1944).

It is not necessary to name the municipality as a party. *Brady*, 348 Mass. at 519. However, the enforcing officials are necessary parties to any such action. *Smith* v. *Board of Appeals of Plymouth*, 340 Mass. at 233-234. *Onorati* v. *O'Donnell*, 3 Mass. App. Ct. at 739. Whether such officials are prosecuting or defending an action, the proceeding in substance is one by or against the municipality. *Brady*, 348 Mass. at 518. *Pitman* v. *Medford*, 312 Mass. 618, 621 (1942). The municipality "represents its public," "appears in their behalf," and "represents the residents and property owners within its boundaries." *Pitman*, 312 Mass. at 621.

Thus, there is no question that the *Morley* action, in which the building inspector participated as the proper enforcing officer, was, in substance, a proceeding against the municipality of Canton in which the interests of all of the citizens of Canton, including the plaintiffs, were represented. The building inspector, by having refused to grant a permit for Lot 28 and by having defended the action brought against him by Morley, already sought the enforcement of the zoning by-law that the present action seeks to require. Cf. *Stow* v. *Pugsley*, 349 Mass. 329, 331 (1965). Based on our analysis of the legal interests of the plaintiffs as abutters and their representation by the town of Canton in the *Morley* action, we hold that the adjudication in *Morley* is now binding upon them.[14]

---

[14] Since the rights of an abutter are quite different from the rights of an owner, the plaintiffs are not helped by the fact that in some

While we have not found any exact holding to this effect in Massachusetts, the result we reach is suggested by, or at least is consistent with, two cases. In *Haverhill v. DiBurro*, 337 Mass. 230, 236 (1958), the owners of an adjoining residence were allowed to intervene in an action brought by the city of Haverhill to enforce its zoning ordinance against the defendant. The court pointed out that it is "questionable whether an affected landowner, merely because he is such, may be let into a suit which is pending for enforcement of the ordinance or by-law." However, since in that case the city, by agreeing with the defendant on a form of decree dismissing the action, had voluntarily ended its enforcement proceedings prior to the allowance of the motion to intervene, the Supreme Judicial Court held that the trial judge could in his discretion admit into the case the landowners who, "upon a dismissal, *without adjudication of rights*, of the city's suit, would have had a right to bring a mandamus proceeding to require enforcement" (emphasis supplied) *Id*. We read the italicized language as intimating that the adjacent landowners would not have been allowed to intervene or to bring an action for mandamus if the rights of the city had previously been adjudicated.

We also read the discussion in *Woods* v. *Newton*, 349 Mass. at 379-380, where the court stated that there is no need to join as necessary parties all the other citizens of the municipality if the enforcing officer participates in the litigation, as indicating that once the "substantive controversy . . . is resolved" with such officer as a party, all the citizens of the municipality are bound. Such a reading makes sense in the light of the citation by the *Woods* court to pages 71-72 of *Povey* v. *School Comm. of Medford*, 333 Mass. 70 (1955), a portion of which the

circumstances an owner who did not participate in prior litigation may not be bound by earlier proceedings. *Pioneer Insulation & Modernization Corp.* v. *Lynn*, 331 Mass. 560, 563 (1954). See *Dresser* v. *Inspector of Buildings of Southbridge*, 348 Mass. 729, 731 (1965).

*Woods* court had previously quoted,[15] and to *Attorney General* v. *Dover*, 327 Mass. 601, 608 (1951). The implication of *Woods* is that, after litigation participated in by the building inspector, a citizen will not be able to compel enforcement of a zoning ordinance judicially determined to be inapplicable. But see *Brookline* v. *Co-Ray Realty Co.*, 326 Mass. 206, 213 (1950). Cf. *Stow* v. *Pugsley*, 349 Mass. at 331.

Our conclusion that the plaintiffs are bound by the prior action is supported by the Restatement (Second) of Judgments § 85 (1) (d) (Tent. Draft No. 2, 1975) and by cases in other jurisdictions. Under § 85.1(d) a person is bound by the rules of res judicata when represented by a party who is "(a)n official or agency invested by law with authority to represent the person's interests."

The most thoughtful discussion of representation of a nonparty by a governmental agency we have found is by Judge Wisdom in *Southwest Airlines Co.* v. *Texas Intl. Airlines*, 546 F.2d 84 (5th Cir.), cert. denied, 434 U.S. 832 (1977). In that case several airlines were held to have been represented by the city of Dallas in prior litigation against Southwest Airlines in which it had been determined that the city could not, by means of an ordinance, prevent Southwest Airlines from flying at an airport which the city wanted to close. The airlines were held

---

[15] The following quotation from *Povey* appears in *Woods*, 349 Mass. at 378:

"Moreover, it is required by c. 231A, § 8, that 'all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.' If then these plaintiffs are proper parties to this proceeding why must not all other taxpayers who have the same rights as the plaintiffs be made parties? And if all others are not made parties why may not other taxpayers who are not bound by the present proceeding bring other and later suits in their respective rights? And if ten or more taxpayers have a right to sue for declaratory relief, why does not a single taxpayer have the same right? We cannot believe that the Legislature intended that public officers should be subject to harassment by taxpayers as to their official acts in this manner."

bound by the prior litigation even though their own pecuniary interest in the success of a new airport exceeded the interest possessed by the general public. Despite such direct monetary interest, the court found that the carriers did not suffer a private legal wrong independent of the violation of the Dallas ordinance. The court, adopting the principle expressed in Comment (d) of § 85 of the Restatement, applied that principle to hold that the prior proceeding was preemptive of the right of the airlines to bring a private action. Judge Wisdom stated "a private party must show more than a special pecuniary interest when attempting to vindicate the breach of a public duty already litigated by a government agency. Permission to relitigate appears reserved for the private plaintiff who would vindicate a breach of duty owed specifically to the plaintiff or who would recover under a 'statutory system of remedies [that] may contemplate enforcement of private interests both by a public agency and the affected private parties.' " *Id.* at 100, quoting from Restatement (Second) of Judgments § 85, Reporter's Note to Comment (d) (Tent. Draft No. 2, 1975).

We believe the present case is stronger than *Southwest Airlines* Co. Not only are the legal interests of the town and the plaintiffs identical, but here the plaintiffs have no direct private right at all.[16] The public right has been litigated and the plaintiffs' right to assert that public right through a proceeding in the nature of mandamus is no longer available to them. Contrast *Williamson* v. *Bethlehem Steel Corp.*, 468 F.2d 1201 (2d Cir. 1972), cert. denied, 411 U.S. 931 (1973).

Other courts, too, have invoked the same principle and have held that litigation by a governmental agency is binding on citizens who were not parties to the prior

---

· [16] The plaintiffs here are not pursuing their limited statutory right under c. 40A, § 17, as appearing in St. 1975, c. 808, § 3, as amended by St. 1978, c. 478, § 32. Compare *Rafferty* v. *Sancta Maria Hosp.*, 5 Mass. App. Ct. 624, 629 (1977).

litigation. In *Rynsburger* v. *Dairymen's Fertilizer Coop., Inc.*, 266 Cal. App. 2d 269, 276-278 (1968), homeowners in close proximity to a fertilizer plant were precluded from prosecuting an action alleging a private nuisance by reason of a previous suit lost by the city alleging a public nuisance. The homeowners were held to have been represented by the city in the previous suit. See also *Price* v. *Sixth Dist. Agricultural Assn.*, 201 Cal. 502, 514 (1927) (taxpayers bound by suits brought by the mayor and the board of supervisors); *Allied Van Lines, Inc.* v. *Central Forwarding, Inc.*, 535 S.W. 2d 412, 415-416 (Tex. Civ. App. 1976) (motor carriers held represented in prior proceedings by the Attorney General); *Burnsville* v. *Bloomington*, 264 Minn. 133, 145 (1962) (determination of the rights of the annexing municipality and of the other town will be res judicata on all the residents of the governmental units involved); *Red Wing* v. *Wisconsin-Minnesota Light & Power Co.*, 139 Minn. 240, 245 (1918); *Greene* v. *Art Inst.* 16 Ill. App. 2d 84, cert. denied, 358 U.S. 838 (1958) (Art Institute bound as it was represented as a member of the public in prior litigation by the Attorney General); *Cincinnati* v. *Cincinnati*, 50 Ohio St. 2d 27 (1977); *Hoffman* v. *Public Employees' Retirement Bd.*, 31 Or. App. 85 (1977). Also cf. *Aerojet-Gen. Corp.* v. *Askew*, 511 F.2d 710, 719 (5th Cir. 1975) (State boards held to represent a county). But see *Patterson* v. *Burns*, 327 F. Supp. 745 (D. Haw. 1971); *California Optometric Assn.* v. *Lackner*, 60 Cal. App. 3d 500 (1976).

The only remaining question is whether there are considerations which make it unfair to bind the plaintiffs to the *Morley* judgment. We think not. See Judge Wisdom's discussion of due process considerations in *Southwest Airlines Co.*, 546 F.2d at 101-102; Note, Collateral Estoppel of Non-parties, 87 Harv. L. Rev. 1485, 1500 (1974).

One of the factors entering the balance as to whether it is unjust to bind a person not a party to litigation is the quality of the representation in the prior action. See *Southwest Airlines Co.*, 546 F.2d at 102. Here, concededly,

the earlier judgment was erroneous. However, there is no contention that there was collusion between the parties or that the building inspector sought to further his own interest at the expense of the persons he represented. There is no showing of incompetence,[17] let alone the serious incompetence which would be necessary to attack the prior judgment. Restatement (Second) of Judgments § 86, Comment (f) (Tent. Draft No. 2, 1975). Cf. Restatement (Second) of Judgments § 123, Comment (d) (Tent. Draft No. 6, 1979). Cf. *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). The usual rule is that judgments, even incorrect ones, are binding upon the parties and their representatives. *Wright Mach. Corp.* v. *Seaman-Andwall Corp.,* 364 Mass. 683, 690-691 (1974). *Stuart* v. *Winslow Elementary Sch. Dist. No.* 1, 100 Ariz. 375, 388 (1966). The record contains no evidence which leads us to depart from that rule.

In weighing the other considerations which lead us to rule that the plaintiffs are bound by the prior action, we deem most important the limited nature of the plaintiffs' interest discussed in part 2 of this opinion. Balanced against that interest, which is to see that the public duty is enforced, are the public and private interests against relitigation of issues previously decided. Where the issuance of a permit to a landowner is contested by the municipal official charged by statute with the enforcement of the zoning by-law,[18] and where, after litigation, a court determines that the lot is a buildable one, the landowner, or persons in privity with him, should be able to rely on that decision in the absence of special circumstances. A landowner should be given some measure of security before undertaking expensive construction. See *Pitman* v. *Medford,* 312 Mass. 618, 619 (1942).

Here, Leahy testified that he relied on the *Morley* case in buying the lot. If the plaintiffs are permitted to reopen

---

[17] See note 9, *supra.*

[18] See note 13, *supra.*

the previously litigated questions because they were not parties to the earlier action, what is to prevent a second or a third action against Leahy by other neighbors[19] who were not parties to or given notice[20] of this action?[21] The Massachusetts rule that adjacent landowners, with respect to zoning laws, can only enforce the public right by an action in the nature of mandamus against their public officials,[22] gives such owners only limited interests. A salutary corollary to that rule is that, in those circumstances where the public right has been litigated and the public officials are bound by the judgment, the neighbors and other citizens are also bound.

*Judgment affirmed.*

---

[19] See *Povey* v. *School Comm. of Medford*, 333 Mass. at 72; note 15, *supra.*

[20] General Laws c. 40A does not require that notice of the issuance of a permit be given to abutters. For a suggestion that some notice of the issuance of a permit should be given, see Ryckman, Judicial and Administrative Review in Massachusetts Zoning and Subdivision Control Cases, 52 Mass. L.Q. 297, 330, 339 (1967).

[21] The only limitation would appear to be the time limit set by former G. L. c. 40A, § 22, now included in c. 40A, § 7, as appearing in St. 1975, c. 808, § 3.

[22] See note 16, *supra.*