15 Mass. App. Ct. 733           733

Planning Board of Nantucket *v.* Board of Appeals of Nantucket.

PLANNING BOARD OF NANTUCKET *vs.* BOARD OF APPEALS OF
NANTUCKET & another.[1]

Nantucket. April 19, 1983. — May 6, 1983.

Present: HALE, C.J., ARMSTRONG, & KASS, JJ.

*Zoning,* Nonconforming use or structure; Lot; Board of appeals: decision.

Voluntary dismissal of an appeal by a town's planning board which
  sought judicial review of board of appeals action granting relief from a
  requirement of the zoning by-law for off-street vehicle parking spaces
  with respect to one of two lots comprising a parcel of land owned by a
  single corporation, after proceedings before the board of appeals
  which, although not without ambiguity, treated primarily the issue of
  the parking space requirement, did not bar judicial review of a subse-
  quent decision by the board of appeals ordering the building inspector
  to issue a building permit for the lot in question, where the building in-
  spector's assigned ground for denying the permit, namely, that the
  proposed structure would cause the ratio of building area to lot area
  for the entire parcel to exceed that permissible under the zoning by-
  law, was not within the scope of the earlier proceedings by the board
  of appeals. [736-738]
A municipal board of appeals exceeded its authority in ordering the
  building inspector to issue a building permit for a nonconforming
  structure on the basis that the building inspector's assigned ground for
  denying the permit, namely, that the structure would cause the
  "ground coverage" ratio for the parcel of land to exceed that allowed
  by the zoning by-law, had been foreclosed by earlier proceedings of
  the board, where the issue of a variance from the ground coverage re-
  quirement was outside the scope of the earlier proceedings, which had
  dealt primarily with relief from the by-law's off-street vehicle parking
  space requirement as applicable to the proposed structure. [738]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 4, 1981.

The case was heard by *Adams,* J.

---

[1] Dreamland Theater, Inc.

*Charles A. Goglia, Jr.,* for the plaintiff.
*Frank W. Kilburn* for Dreamland Theater, Inc.
*Paul G. Farrell* for Board of Appeals of Nantucket.

ARMSTRONG, J.   The defendant Dreamland Theater, Inc., owns a roughly rectangular parcel of land in Nantucket which has frontage on South Water Street, Oak Street, and Easy Street, with a seasonal movie theater located at the South Water Street end.   The entire parcel is within a Residential-Commercial zoning district and was subject, under the 1980 zoning by-law, to a maximum ground coverage ratio (building area to lot area) of fifty percent and an off-street parking-spaces requirement which apparently works out to eleven or twelve spaces.[2]   Until 1979 the Easy Street end of the property was used for parking, but in that year Dreamland fenced off the parking lot, barring cars from entering.   In 1980 it submitted a plan to the planning board which showed a division of the parcel into two lots: lot 1, having 7,701 square feet which contained the movie theater and a small concrete structure to the rear of the theater; and lot 2, containing the disused parking lot, having 5,595 square feet.   In April, 1980, the plan was endorsed "approval [under the Subdivision Control Law] not required."[3]   See G. L. c. 41, § 81P.

---

[2] Under a 1974 zoning by-law there was no parking-spaces requirement for buildings in the Old Historic District.   The record indicates that in April, 1979, that exemption was eliminated, but provision was made for relief by special permit from the parking-spaces requirement as to any land located in the Old and Historic Nantucket District, established by St. 1955, c. 601.   The Old and Historic Nantucket District is an historic preservation district with boundaries defined by statute and is to be distinguished from the Old Historic District which is a zoning district the boundaries of which are defined by the Nantucket zoning map.   The Dreamland Theater property is within the Old and Historic Nantucket District (the historic preservation district) but is not within the Old Historic District (the zoning district).   Thus, the requirement that the movie theater have parking spaces predated the 1979 zoning amendment.

[3] The area requirement for building lots in the Residential Commercial District is 5,000 square feet, and the frontage requirement is forty feet. Lot 2, considered by itself, complied in both respects.   No question has been raised or argued in this litigation whether the planning board might

In July, 1980, Dreamland applied for a special permit under a section (6-B-4[4]) of the zoning by-law which enabled the board of appeals to alleviate the parking spaces requirement otherwise applicable to lots (see n.2). The application was not with reference to the theater building, but was instead with reference to a proposed new commercial building to be constructed on lot 2. Viewing lot 2 in isolation from the entire original parcel, the zoning by-law would require seven parking spaces ancillary to the new commercial building. Dreamland proposed to furnish only six. A public hearing was held on the application, advertised as "the application of Dreamland Theater, Inc., for relief under section 6-B-4 of the zoning by-law,[5] to eliminate parking requirements for proposed retail, office and residential building." The minutes of the hearing disclose opposition based on parking problems and traffic congestion in the downtown area generally and the need specifically for theater parking spaces as required by the zoning by-law. The decision of the board of appeals, rendered September 19, 1980, stated that "[t]he principal question [was] whether this [l]ot 2 should be required to provide parking space for the [t]heater located on [l]ot 1", and ruled for reasons not altogether clear that it should not. However, "[i]n view of the congested nature of this neighborhood, the increase in traffic and decrease of available parking space, the [b]oard declines to modify the requirement of seven spaces for the proposed building on lot 2." The decision ended: "Therefore, the [b]oard grants the application for a [s]pecial [p]ermit to construct a building on Easy Street, [l]ot 2 . . ., provided seven (7) parking spaces are provided

have been justified in refusing such an endorsement in view of the nonconformity of lot 1 to other requirements of the zoning by-law. See *Smalley v. Board of Appeals of Harwich,* 10 Mass. App. Ct. 599 (1980).

[4] The section referred to appears in the 1980 by-law as § 6-B-4. The parties stipulated at trial that the 1980 by-law was the relevant by-law at all times pertinent to the case.

[5] The notice said "section 6-C-4", but the by-law has no section so designated, and it is clear that § 6-B-4 must have been intended.

736            15 Mass. App. Ct. 733

Planning Board of Nantucket v. Board of Appeals of Nantucket.

for use to customers and employees." No mention was made in the application, the hearing notice, the recorded comments at the hearing, or the decision, about the ground-coverage ratio requirements of the by-law.

The planning board filed an appeal from the September, 1980, decision in the Superior Court but later entered a voluntary dismissal with prejudice. In 1981 Dreamland applied to the building inspector for a building permit to construct the proposed commercial building on lot 2. The building inspector refused the permit, apparently on the ground that the additional construction would cause the ground coverage ratio on lots 1 and 2 combined to exceed the by-law's fifty percent maximum. Dreamland appealed to the board of appeals, which ordered the permit to issue, taking the position that the issue of ground coverage ratio was foreclosed by the 1980 proceedings. The planning board appealed to the Superior Court from the 1981 decision of the board of appeals, and appeals to this court from a decision which held that the dismissal of the appeal from the board's 1980 decision barred consideration of the merits of the board's 1981 decision.

It was stipulated in the Superior Court that the ground coverage of the proposed commercial building on lot 2 would not exceed fifty percent of the area of lot 2 but that construction of that building would cause the ground coverage ratio of all the buildings on lots one and two to exceed fifty percent of the area of the combined lots.[6] From those stipulations it follows by necessary inference that the maximum fifty percent ground coverage ratio specified in the by-law is exceeded on lot 1 by existing buildings on that lot.

It is doubtless true that the dismissal of the planning board's appeal from the 1980 decision precludes the planning board from challenging in 1981 whatever matters were before the board of appeals for decision in 1980. *Morganelli*

---

[6] The complaint filed by the planning board in 1980 states that the theater building and the small concrete building behind it cover 5,570 square feet, lot 1 having 7,701 square feet.

15 Mass. App. Ct. 733                                    737

Planning Board of Nantucket *v.* Board of Appeals of Nantucket.

v. *Building Inspector of Canton,* 7 Mass. App. Ct. 475 (1979). But the parties characterize differently the matters that were before the board of appeals in 1980. According to that board the 1980 proceedings determined that a building permit should issue for the proposed new commercial building on lot 2. According to the planning board all that was before the board of appeals in 1980 was an application for a special permit to have six rather than seven parking spaces in conjunction with the proposed new building and that application was in essence denied. The planning board's interpretation finds support in the application and the hearing notice; the board of appeals' finds support in the dispositive paragraph of the 1980 decision. There was no comparable uncertainty in the *Morganelli* case, where the first proceeding was a mandamus action against the building inspector to require him to issue a building permit for construction of a house in a particular location which the building inspector thought would violate the zoning by-law. In general, we think that the appropriate policy, when the scope of the proceedings before (and the decision of) a board of appeals is in doubt, is to construe the proceedings circumspectly and to avoid an interpretation which leaves the scope of the board's decision more sweeping than abutters and other interested persons had reason to anticipate when notices were given and hearings had.

The evil of expansive construction of ambiguous proceedings is apparent in this case. Whatever interpretation is put on the 1980 proceedings, it is clear that they were confined to the subject of parking and that no mention was made of the problem of ground coverage ratio. Lot 1, viewed in isolation from lot 2, is in violation of the maximum ground cover ratio established in the by-law. The buildings on lot 1 could not be valid nonconforming structures, because Dreamland had sufficient land area to support the structures and had no right to create a nonconformity. *Vetter* v. *Zoning Bd. of Appeal of Attleboro,* 330 Mass. 628, 630-631 (1953). *Sorenti* v. *Board of Appeals of Wellesley,* 345 Mass. 348, 353 (1963). *Alley* v. *Building*

*Inspector of Danvers,* 354 Mass. 6, 7-8 (1968). *Lindsay* v. *Board of Appeals of Milton,* 362 Mass. 126, 131 (1972). *Giovannucci* v. *Board of Appeals of Plainville,* 4 Mass. App. Ct. 239, 242-244 (1976). *Girard* v. *Board of Appeals of Easton,* 14 Mass. App. Ct. 334, 335-336 (1982). The planning board's endorsement under § 81P of the plan creating lots 1 and 2 gave those lots no standing under the zoning by-law. *Gattozzi* v. *Director of Inspection Servs. of Melrose,* 6 Mass. App. Ct. 889, 890 (1978). *Smalley* v. *Planning Bd. of Harwich,* 10 Mass. App. Ct. 599 (1980). For zoning purposes, therefore, the building inspector correctly treated lots 1 and 2 as a single lot (see *Becket* v. *Building Inspector of Marblehead,* 6 Mass. App. Ct. 96, 104 [1978]), and when so viewed it is clear that the proposed commercial building may not be constructed unless Dreamland obtains a variance from the ground coverage requirement of the zoning by-law.

Despite some ambiguity in the 1980 proceedings, there can be no contention that they concerned or resulted in the necessary variance either for lot 1 or for the combined lots. The application was directed solely to lot 2 and specifically sought relief only from the parking-spaces requirement. There was no mention of variance in either the hearing notice or at the hearing, and the board's decision made no reference to a variance, to the ground-coverage ratio requirement, or to the concepts (such as hardship, circumstances peculiar to the parcel, and derogation from the purpose and intent of the by-law) which are necessarily invoked when variances are sought or granted. See G. L. c. 40A, § 10, as amended by St. 1977, c. 829, § 4B. To treat the 1980 decision as having granted such a variance would eviscerate the elaborate statutory provisions for notice, hearing, and decision which attend the granting of that disfavored form of relief. The dismissal of the appeal from the 1980 decision could not have the effect of enlarging the scope of the underlying decision.[7]

---

[7] The suggestion that "the use of [l]ot 1 and the building thereon is not a matter of concern to the Court but rather a matter for the attention of the

The judgment is reversed, and a new judgment is to be entered declaring that the decision of the board of appeals was in excess of its authority and is annulled.

*So ordered.*

appropriate officials if and when some use is attempted to be made of the land and buildings on [l]ot 1, if such use is not in compliance with the zoning by-law" is not apposite. The ground cover violation will consist not in the use of the buildings but in their existence. The violation will occur when the proposed building is built, and thus its construction may not properly be permitted. We likewise reject the suggestion of the board of appeals that enforcement of the zoning by-law is premature because the life of the building permit is six months and perhaps by the end of that time the existing buildings may have been dismantled or diminished in size.