**Christ BOURAS**

v.

**The TOWN OF DANVERS and Danvers Retirement Board.**

**Civil Action No. 97–CV–11425–RGS.**

United States District Court, D. Massachusetts.

July 7, 1998.

Nicholas J. Decoulos, Decoulos & Decoulos, Peabody, MA, John C. Collins, Shrewsbury, MA, for Plaintiff.

**160**

Michael A. Byrnes, Michael C. Lehane, Murphy, Hesse, Toomey & Lehane, Quincy, MA, for Defendants.

James B. Lampke, Lampke & Lampke, Hingham, MA, for Movant.

*MEMORANDUM AND ORDER ON DE-FENDANTS' MOTION TO DISMISS AND MOTION TO VACATE THE PRELIMINARY INJUNCTION*

STEARNS, District Judge.

On May 8, 1997, Christ Bouras, the Chief of Police for the Town of Danvers, turned sixty-five. On May 9, 1997, the Danvers Retirement Board notified Bouras that under Massachusetts law "no member in the occupation ... of uniformed member of a ... police department shall continue in service beyond the last day of the month in which he attains the age of sixty-five.... Consequently, ... you must retire at the end the month." On May 21, 1997, Bouras filed a Complaint in the Superior Court against the Town of Danvers and the Danvers Retirement Board (collectively, the Town) alleging that his forced retirement violated the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623.

On May 27, 1997, Justice Charles Grabau enjoined the Town from retiring Bouras. The Town appealed to a Single Justice of the Massachusetts Appeals Court. On June 23, 1997, the Town removed the case to the federal district court.[1] On July 14, 1997, the Town filed a motion to vacate the preliminary injunction and a motion to dismiss.[2] On November 3, 1997, the court granted the Massachusetts Municipal Association's motion to intervene to file an amicus curiae brief. On December 3, 1997, a hearing was held on the motions.

The Town seeks to dismiss the Complaint on grounds that a 1996 amendment to ADEA carves out an exception to the Act's general prohibition against age discrimination. The amendment allows states and municipalities to enforce mandatory retirement provisions affecting law enforcement officers that were adopted before 1983 without since being modified. The Town's main contention with respect to its companion motion to vacate the preliminary injunction is that Bouras is not likely to succeed on the merits.[3] Because

1. The following day, Justice Roderick Ireland (who was unaware of the removal) affirmed the issuance of the preliminary injunction:

   [t]he plaintiff has a reasonable likelihood. of achieving success in his claim against the Town for age discrimination in violation of the Federal Age Discrimination in Employment Act, 29 U.S.C. § 623. The plaintiff (whom the Town concedes is mentally and physically capable of continuing in his current position as the Town's police chief) has demonstrated that he will be irreparably harmed without continued injunctive relief. See *Packaging Industries Group, Inc. v. Cheney*, 380 Mass. 609, 405 N.E.2d 106 (1980). To remove the plaintiff, replace him with an acting chief, and then possibly reinstate him, would result in irreparable disruption to both the plaintiff and the Town. Additionally, the present litigation (and possible related litigation by the plaintiff to vindicate his rights) could well drag on beyond the plaintiff's seventieth birthday when he would be subject to mandatory retirement. At the same time, I fail to see how the Town will suffer irreparable harm if the injunctive relief continues during the pend[e]ncy of this matter.
   While the Single Justice's affirmance is moot because the case had been removed to the federal court, Bouras argues that Justice Ireland's determination as to the merits of his claim should be accorded deference as there are no

facts before this court that were not before Justice Ireland.

2. On July 15, 1997, Bouras filed a motion to remand arguing that the Town had waived its right to remove the case by·appealing the preliminary injunction. On August 1, 1997. this court denied the motion after finding that the Town's Appeal was not the kind of substantial defensive action that results in a compulsory waiver.

3. Bouras argues that he will suffer irreparable harm because his only vocational skill is that of a police officer and the very law he complains about prevents his being hired by any other department. Bouras further argues that even should he prevail in this lawsuit, reinstatement is an unlikely option, as the litigation could conceivably consume the five year window during which he would be eligible to work. See *Gately v. Comm. of Massachusetts*, 2 F.3d 1221, 1234 (1st Cir.1993) (an injunction enjoining the mandatory retirement of several Registry, Capitol, and Metropolitan District Commission police officers who were consolidated into the Massachusetts State Police was not an abuse of discretion where reinstatement was unavailable to those plaintiffs who had reached retirement age during the pendency of the lawsuit and a prolonged absence from the force during the consolidation would place any returning officer at a serious disadvantage).

the issues presented in the motion to dismiss are potentially dispositive of both motions, they will be addressed first.

### FACTS

The parties agree that the issue before this court is a dispute of law requiring an analysis of the interplay among state and federal statutes. The most important of these, the ADEA, was enacted by Congress in 1967 to protect employees forty and over from age discrimination. ADEA states that it "shall be unlawful for an employer ... to discharge any individual ... because of the individual's age." 29 U.S.C. § 623(a)(1). "The legislative history of ... ADEA makes quite clear that the policies and substantive provisions of the Act apply with especial force in the case of mandatory retirement provisions." *Western Air Lines, Inc. v. Criswell,* 472 U.S. 400, 410, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985).

Despite the strong anti-age discrimination policy of ADEA, the Town argues that § 623(j) of the Act, adopted in 1996, exempts certain mandatory retirement provisions affecting law enforcement officers. Section 623(j) reads as follows.

Employment as firefighter or law enforcement officer

It shall not be unlawful for an employer which is a State, ... or a political subdivision of a State ... to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken-

(1) with respect to the employment of an individual as a firefighter or as a law enforcement officer, the employer has complied with section 3(d)(2) of the Age Discrimination in Employment Amendments of 1996 if the individual was discharged after the date described in such section, and the individual has attained-

(A) the age of hiring or retirement, respectively, in effect under applicable State or local law on March 3, 1983; or

(B)(i) if the individual was not hired, the age of hiring in effect on the date of such failure or refusal to hire under applicable State or local law enacted after September 30, 1996; or

(ii) if applicable State or local law was enacted after September 30, 1996, and the individual was discharged, the higher of-

(I) the age of retirement in effect on the date of such discharge under such law; and

(II) age 55; and

(2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.

An explanation of the reach of § 623(j) begins with ADEA's statutory history. In 1986, Congress amended ADEA by inserting a seven year exemption for preexisting state and municipal mandatory retirement provisions affecting law enforcement officers and firefighters.[4] The amendment came in response to the Supreme Court's ruling in *EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), that ADEA's prohibition against mandatory retirement extended to state and local governments. *Gately,* 2 F.3d at 1228–1229. The original version of § 623(j) gave "states and local officials a seven-year transition period within which they c[ould] lawfully retire law enforcement officers pursuant to a retirement plan in effect on March 3, 1983 ... [the] date that the Supreme Court decided ... *EEOC v. Wyoming.*" Id.

On December 31, 1993, Congress repealed § 623(j). In 1996, § 623(j) was reenacted in its present form, again exempting state and local mandatory retirement laws affecting law enforcement officers.[5] The "Historical and Statutory Notes" to the 1996 Amendment contain a "Rule of Construction" that states:

the administration and use of physical and mental fitness tests to measure ability and competency of law enforcement officers and firefighters to perform the requirements of the jobs of the officers and firefighters."

---

4. The exemption was initially designated subsection (i) and later redesignated as subsection (j).

5. Public Law 104–208, Div. A. Title I, § 101(a), directs the Secretary of Labor to develop (by September 30, 2000), "advisory guidelines for

[n]othing in the repeal, reenactment, and amendment made by subsections (a) and (b) ... shall be construed to make lawful the failure or refusal to hire, or the discharge of, an individual pursuant to a law that-

(1) was enacted after March 3, 1983 and before the date of enactment of the Age Discrimination in Employment Amendments of 1996 [Sept. 30, 1996]; and

(2) lowered the age of hiring or retirement, respectively, for firefighters or law enforcement officers that was in effect under applicable State or local law on March 3, 1983.

It is undisputed that prior to March 3, 1983, Chapter 32 of the General Laws required law enforcement officers to retire at age sixty-five.[6] Were it not for an ambiguity created by an intervening act of the Legislature, § 623(j) would be facially dispositive of Bouras's case. However, on October 20, 1987, Chapter 415 of the Acts and Resolves of 1987 became law. Chapter 415, § 1, inserted the following provision (§ 90H) in Chapter 32.

Any member in service, classified in an occupation or position classification in Group 2 or Group 4, except such occupations or position classifications as shall be excepted by the personnel administrator, after consultation with the secretary of the executive office of public safety, where said administrator determines by regulation that age is a bona fide occupational qualification, shall continue in service, at such member's option, notwithstanding the fact that he has attained age sixty-five; provided, however, that he is mentally and physically capable of performing the duties of his office or position. Any such member between age sixty-five and seventy shall certify annually to the retirement board his continuing capacity to perform said duties; provided, however, that the appointing authority may require such member to be examined by an impartial physician designated by the retirement authority to determine such capability.

Section 2 of Chapter 415, which was not inserted into the statute, provided that:

[n]otwithstanding the provisions of section one, no member in the occupation or position classification of uniformed member of a paid fire department or uniformed member of a police department, ... shall continue in service beyond the last day of the month in which he attains the age of sixty-five unless the personnel administrator, after consultation with the secretary of the executive office of public safety, shall have determined by regulation that age is not a reasonably necessary bona fide occupational qualification for service in said occupations or position classifications. For the purpose of promulgating the regulations provided for in this act, the personnel administrator shall conduct a study, to be completed not later than one year from the effective date of this act, to determine whether age continues to be a reasonably necessary bona fide occupational qualification for service in said occupations or position classifications.

Upon completion of said study, the personnel administrator shall conduct a further study to determine whether age is a reasonably necessary bona fide occupational qualification for service in any other occupations or position classifications set forth in Group 2 or Group 4 of clause (g) of subdivision (2) of section three of chapter thirty-two of the General Laws.

On April 25, 1989, the Massachusetts Personnel Administrator announced that he had determined that age was in fact a bone fide professional qualification (BFOQ) for law enforcement personnel. As a result, the Administrator never issued the regulations contemplated by § 2 of Chapter 415.

## DISCUSSION

■ Bouras argues that the 1996 version of § 623(j) is inapplicable because his retirement was not mandated pursuant to an un-

---

**6.** Chapter 32 (the Retirement Systems and Pensions Act), the relevant parts of which have not been amended since 1983, classifies municipal police officers as Group 4 employees. G.L. c. 32, § 3(g). Under § 5(1), "[a]ny member in service shall be retired ... upon attaining the maximum age for his group...." Under § 1, the "maximum age" is defined as "the age on the last day of the month in which any member classified ... Group 4 attains age sixty-five ...."

modified statute "in effect under applicable State or local law on March 3, 1983." § 623(j)(1)(A). Bouras's contention is that the 1987 adoption of Chapter 415 (and the insertion of § 90H in Chapter 32), effectively amended §§ 1, 3 and 5 of the Chapter, thereby taking them out of the § 623(j) ADEA exemption.[7]

The Town responds, persuasively, that the intent of Chapter 415 was to create an exception to the mandatory retirement age for local law enforcement officers by raising it to age seventy in defined circumstances, but only if the Personnel Administrator were to conclude that age was not a BFOQ. It is undisputed that this contingent event never occurred. Sections 1, 3 and 5 of Chapter 32 (insofar as material to this case) have thus remained in effect without change since 1983. As a Group 4 employee, Bouras's retirement age is fixed at sixty-five by a statute exempted by ADEA § 623(j).

This conclusion is buttressed by the "Historical and Statutory Notes" to the 1996 Amendment explaining § 623(j)'s "Rule of Construction". They state that:

[n]othing in the [Act] ... shall be construed to make lawful ... the discharge of an individual pursuant to a law ... enacted after March 3, 1983 and before ... Sept. 30, 1996; and [which] *lowered the age of hiring or retirement,* respectively, for firefighters or law enforcement officers that was in effect under applicable State or local law on March 3, 1983. (Emphasis added).

Thus, even if G.L. c. 32, § 90H, could in some fashion be construed as having had an amending effect on Chapter 32, §§ 1, 3, and 5, § 90H did not *lower* a pre–1983 statutory retirement age. Indeed the intent of Chapter 415 was to the contrary. As the "Rule of Construction" makes clear, the drafters of the exemption were not concerned with changes in state law that placed law enforcement officers in a better position with respect to mandatory retirement, only with changes that made things worse.[8] For these reasons, the § 623(j) exemption to ADEA applies to Chapter 32 and Bouras's federal claim must be dismissed.

■ In the alternative, Bouras argues that even if § 623(j) applies, he is exempt from retirement under G.L. c. 32, § 90H, because section 2 of Chapter 415 applies to "uniformed member[s] of a police department" and as a chief of police he is not required to wear a uniform. Bouras requests that this court remand his state claims for a determination by the state courts in the event his ADEA claim is dismissed. Because of the unique interest of the State in the ultimate resolution of an issue that potentially affects every local police department in Massachusetts, the court will decline supplemental jurisdiction.[9] See *Flynn v. City of Boston,* 140 F.3d 42, 48 (1st Cir.1998).

For the same reason I will deny the motion to vacate the preliminary injunction entered by the state court. I express no opinion on Bouras's argument regarding the scope of § 2 of Chapter 415 (other than to note that two state court judges have appeared to agree with it). Whether the injunction should continue to stand is a matter best left to the Superior Court.

---

7. The Town's letter to Bouras notifying him of his forced retirement cited Chapter 415 as the applicable statute. Chapter 415, however, takes its baseline retirement age of sixty-five for law enforcement personnel from Chapter 32, §§ 1, 3, and 5.

8. Bouras also argues that 1991 consolidation of the Registry, Capitol, and Metropolitan District Commission police forces with the Massachusetts State Police (MSP), pursuant to 1991 Mass. Acts c. 412, § 1, also resulted in a post–1983 amendment to Chapter 32, §§ 1, 3, and 5, because all officers employed in the newly consolidated MSP were classified as Group 3 employees subject to a new mandatory retirement age of fifty-five. See G.L. c. 32, § 26(3)(a) ("[a]ny member in service classified in Group 3 shall be retired ... upon his attaining age fifty-five"). The First Circuit in *Gately,* 2 F.3d at 1229, agreed that the adoption of the *lowered* mandatory retirement age for MSP officers made § 623(j) inapplicable because § 26(3)(a) was enacted after 1983. Bouras, however, is not being forced to retire pursuant to that section, the adoption of which did not affect Group 4 employees who are covered by Chapter 32, §§ 1, 3, and 5.

9. The Town also argues that Bouras failed to exhaust his administrative remedies by failing to file a claim with the MCAD or the EEOC before bringing this lawsuit. Bouras cites Massachusetts cases suggesting that a pure issue of law is not subject to the exhaustion requirement.

## ORDER

For the foregoing reasons, the motion to dismiss the ADEA claim is *ALLOWED*. The motion to vacate the preliminary injunction is *DENIED*. Supplemental jurisdiction is *DECLINED*. The remaining claims are *REMANDED* to the Superior Court for further consideration.

SO ORDERED.